**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

EXCLUSIVELY CATS VETERINARY
HOSPITAL, P.C.,

     Plaintiff,

v.                                   Case No. 19-11228

M/A/R/C RESEARCH, L.L.C.,

     Defendant.
_____/

### OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING AS MOOT PLAINTIFF'S MOTION TO CERTIFY CLASS

     Is a facsimile transmission in the form of an opinion survey, seeking information but offering for sale no product, service, or anything else, an "advertisement" the purveying of which is prohibited by federal law? The court, in agreement with Defendant, says "no." Secondarily, what if the fax also contains an offer of nominal compensation (e.g., with a $25 gift card)? Does the survey become an advertisement? Again, "no." Thirdly, does Michigan law recognize a claim for conversion of property based upon the unsolicited use of a sheet of paper and a small amount of printer toner to produce the fax image? This court says "we do not know," and therefore declines to exercise jurisdiction in the absence of a federal claim.

     Plaintiff Exclusively Cats Veterinary Hospital, P.C., sues Defendant M/A/R/C Research, L.L.C., for violating the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(C), and for statutory conversion, Mich. Comp. Laws § 600.2919. (ECF No. 1.) Defendant sent a telephoned facsimile ("fax") to Plaintiff's veterinary office

asking Plaintiff to complete a survey. Plaintiff alleges that Defendant violated the TCPA's bar on "unsolicited advertisement" and converted Defendant's office supplies, such as paper and toner. 47 U.S.C. § 227(b)(1)(C). The same day Plaintiff filed its complaint, it also moved for class certification under Federal Rule of Civil Procedure 23(a)(1). (ECF No. 3.)

Defendant moves to dismiss. (ECF No. 12.) The court finds the matter fully briefed, and a hearing unnecessary. E.D. Mich. L.R. 7.1(f)(2). (ECF Nos. 14, 16.) For the reasons provided below, the court will grant Defendant's motion. Plaintiff's TCPA claim will be dismissed and Plaintiff's conversion claim will be dismissed without prejudice.

## I.  BACKGROUND

The facts of this case are undisputed and largely trace the allegations in Plaintiff's complaint. (ECF No. 1, PageID.4-7, ¶¶ 12-21; ECF No. 20.)

Defendant is a consulting firm that offers market research. (ECF No. 1, PageID.5, ¶ 13; ECF No. 20, PageID.139, ¶ 3.) As part of Defendant's business, it created surveys and sent them to participants in target markets. (ECF No. 1, PageID.5, ¶ 13; ECF No. 20, PageID.139-41, ¶¶ 3-7.) Defendant used the information collected to develop more accurate and well-supported advice to its clients who are interested in becoming engaged in the market, such as potentially selling a product to market participants some time in the future, although the exact use is unknown. (ECF No. 1, PageID.5, ¶ 13; ECF No. 20, PageID.139-41, ¶¶ 3-7.)

On July 5, 2016, Defendant sent Plaintiff's business an unsolicited fax. (ECF No. 1, PageID.5-6, ¶ 15; ECF No. 20, PageID.141-42, ¶¶ 8-11.) The fax informed Plaintiff

that Defendant was "seeking veterinarians to participate in an important research study." (ECF No. 1-1, PageID.21.) Defendant stated that it was "not selling anything" and instead sought Plaintiff's "opinions that will help [Defendant] improve products that ultimately benefit [Plaintiff's] patients." (*Id.*) Defendant identified the product as a "new veterinary pain management product." (*Id.*) As an incentive to complete the survey, Defendant offered veterinarians who completed the survey a $20 Amazon gift card and a chance to win a $500 prize. (*Id.*) At the bottom of the fax, Defendant indicated that the recipient's "fax number will not be shared or sold" and that the message was "for market research purposes only." (*Id.*)

An image of the full-page fax, as received by Plaintiff, is rendered below:

******* REMINDER ********

**Veterinarians - Your Opinion Counts!**

**We need your feedback on a potential new veterinary pain management product.**

M/A/R/C[*] Research is seekingveterinarians to participate in an important research study.We are not selling anything; rather, we are looking to gather your opinions that will help us improve products that ultimately benefit your patients. Your answers are anonymous and the information you share will never be used to identify you.

*Qualifying veterinarians who complete the survey will receive a $20 Amazon.com gift card[1].*

*In addition, the first 125 veterinarians who successfully complete this survey will be entered intoasweepstakes to win one (1) $500 prizel[1].*

To participate in this short, 10-minute survey, just visit the link below. You can access the survey online at any time – 24 hours a day, 7 days a week.

Be sure to keep this fax until you have completed the survey. If, for any reason you need to exit, you will be able to return to the survey later. You will just need to access the same link and enter the5-digit code providedbelow.

Hurry! We are able to accept only a limited number of participants and the survey link will expire soon, so if you'd like to participate, please take a moment to share your feedback now.

Survey link:**http://www.marconline.com/VET**
PASSWORD: **41137**

We appreciate your opinions and are grateful for your help!
M/A/R/C[*] Research

[1]Should you qualify for the research, wish to receive it and are permitted by law and your company's policies to do so.
*********************************************************************
Your fax number will not be shared or sold. We are contacting you for market research purposes only. This is an exclusive offer; only original recipients of this fax are eligible. If you prefer not to receive faxes like this in the future, please call 855-642-4404 and follow the instructions to be removed from our database.
*********************************************************************

(*Id.*)

## II. STANDARD

Under Federal Rule of Civil Procedure 12(b)(6) a party can move to dismiss a complaint for "failure to state a claim upon which relief can be granted." In considering a motion to dismiss, the court must "construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true." *Laborers' Local 265 Pension Fund v. iShares Trust*, 769 F.3d 399, 403 (6th Cir. 2014). "To survive a motion to

dismiss, a complaint must contain factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Determining plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The court may consider "documents incorporated into the complaint by reference . . . and matters of which a court may take judicial notice" in addition to allegations in the complaint. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

### III. DISCUSSION

Plaintiff includes both a federal claim under the TCPA and a statutory conversion claim under state law. 47 U.S.C. § 227(b)(1)(C); Mich. Comp. Laws § 600.2919. The court will address both in turn.

### A. TCPA

The TCPA makes it unlawful "to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C); 47 C.F.R. § 64.1200(a)(4) (Federal Communications Commission regulation implementing TCPA). When an unsolicited advertisement is sent via fax, the sender is liable to the recipient "unless the 'sender' has an 'established business relationship with the recipient' and meets several other requirements," such as an opt-out notice. *Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 634 (6th Cir. 2015) (quoting 47 U.S.C. § 227(b)(1)(C)); 47 U.S.C. § 227(b)(3)

5

(creating a private cause of action); 47 U.S.C. § 227(b)(2)(D) (describing the requirements for an opt-out notice).

Defendant makes no attempt to argue that it had an "established business relationship" with Plaintiff or otherwise complied with the requirements for unsolicited advertisements under the TCPA. 47 U.S.C. § 227(b)(1)(C). Instead, Defendant's arguments focus on whether the fax sent to Plaintiff is an advertisement covered by the TCPA at all. If Defendant's fax was not covered, Plaintiff's TCPA claim fails. *Id.* (ECF No. 1, PageID.11, ¶ 30 (Plaintiff alleging that Defendant's TCPA violation is based on the transmission of an "unsolicited advertisement").) The determination of whether a fax is a "advertisement" is a question of law for the court to decide. *Sandusky Wellness Center, L.L.C. v. Medco Health Sols., Inc.*, 788 F.3d 218, 221 (6th Cir. 2015) ("So were these faxes advertisements? It is a question of law our court has never addressed."). The court finds Defendant's fax to be an information-based survey, not an advertisement.

The Sixth Circuit decision *Sandusky*, 788 F.3d 218, is central to the dispute. Both Plaintiff and Defendant rely on *Sandusky* to establish the definition of advertisement. (ECF No. 12, PageID.67; ECF No. 14, PageID.102-03.) *Sandusky* involved a pharmacy benefit manager ("PBM"), a company that served health care plan purchasers, such as employers, to help cover prescription drugs and lower costs for plan members, such as employees. *Id.* at 220. As part of the PBM's services, it sent a formulary list of covered prescription drugs directly to healthcare providers in the hope that the providers would prescribe drugs included in the plan, thus lowering costs for members. *Id.* The PBM in *Sandusky* sent out a fax containing a list of preferred drugs as well as the PBM's name

6

and contact information. *Id.* One of the healthcare providers who received the fax sued, claiming the PBM sent an "unsolicited advertisement" under the TCPA. *Id.* at 221.

The court first looked to the text of the statute. It found that "[a]dvertising is 'the action of drawing the public's attention to something to promote its sale' . . . or 'the action of calling something (as a commodity for sale, a service offered or desired) to the attention of the public.'" *Id.* at 221-22 (quoting *Advertising*, Black's Law Dictionary 65 (10th ed. 2014); *Advertising*, Webster's Third New International Dictionary 31 (1986)). Continuing, the court clarified that "material that advertises something promotes it to the public as *for sale*" and "must be *commercial* in nature." *Id.* at 222 (emphasis in original). Thus, "[t]o be an ad, the fax must promote goods or services that are for sale, and the sender must have profit as an aim." *Id.* at 223-24. The court provided examples of McDonalds running a television ad for coffee to be bought at a McDonalds store, a law firm advertising expertise in a newspaper to get clients to pay for attorney services, and a medical device manufacturer sending a fax to potential buyers illustrating the product and inviting the buyers to a free seminar in order to promote the device's sale. *Id.* at 222.

Applying this standard to the PBM's fax, the court found the fax to be not an advertisement and not covered by the TCPA. The court reasoned that the PBM did not send the fax "because the drugs or [the PBM's] services are for sale" and that the PBM had "no interest whatsoever in soliciting business from [the healthcare provider]." *Id.* at 222. The fax was instead "informational" in nature and "lack[ed] the commercial components inherent in ads." *Id.*

An analysis of *Sandusky* and the statutory and regulatory text of the TCPA demonstrates that surveys are not advertisements subject to liability. Surveys, such as the one Defendant proffered to veterinarians employed at Plaintiff's firm, are offering no good or service "for sale." *Id.* at 223-24. Requests to submit information regarding preferences, beliefs, and attitudes instead enhance knowledge and understanding. Whether they are used to develop better goods or services used by market participants, relied on to develop market research on the trends and developments in an industry for investment or news reporting, or compiled with other indicators to develop more clearly a picture of the national or international economy, they are not sent to merely rake a percentage off the top of monetary receipts. They strengthen economic understanding and allow for better functioning markets. *See, e.g.*, Huileng Tan, *China's Factor Activity Slumps in February to Weakest Reading On Record, Private Survey Shows*, CNBC (Mar. 1, 2020), https://www.cnbc.com/2020/03/02/china-economy-caixinmarkit-february-manufacturing-pmi-amid-coronavirus.html (discussing the effects of coronavirus outbreak on manufacturing in China based off survey data); Allison Prang, *Coronavirus to Test Small-Business Optimism*, The Wall Street Journal, Mar. 1, 2020 (analyzing business confidence of small business in the United States using surveys).

Of course, surveys can be conducted by for-profit commercial entities. That however does not convert a survey into an advertisement for sale and thus a commercial transaction under the TCPA. *Id.* at 222, 223-24. The PBM in *Sandusky* was certainly reaching out to health care providers as part of its commercial relationship with heath care plan purchasers and its profit-making service to lower drug costs for plan members. If the health care provider prescribed only the drugs listed on the PBM's fax,

8

drugs provided to members would be provided at a lower cost. That would thereby improve the quality of services PBM was providing to health plan purchasers and perhaps igniting future business opportunities with the PBM's current clients as well as potential new clients. The *Sandusky* court explicitly recognized this possibility by rejecting the health care provider's argument that the PBM "might financially benefit . . . several locks down the stream of commerce" and therefore is liable under the TCPA. *Id.* at 225. The court explained that "[t]he fact that the sender might financially gain an ancillary, remote, and hypothetical economic benefit later on does not convert a noncommercial, informational communication into a commercial solicitation." *Id.*

The *Sandusky* court's reasoning conforms to the Federal Communication Commission's ("FCC") interpretation of the TCPA and the agency's own implementing regulations. Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005, 71 Fed. Reg. 25967 (May 3, 2006). The FCC has identified numerous situations in which communications from for-profit entities were not advertisements, despite advancing commercial interests and potentially profiting the company over the course of time. Sending a receipt to confirm the purchase of a product, transmitting a travel itinerary to a trip customer, conveying a notice soliciting bid proposals on a construction project, and spreading a trade organization newsletter all advance the profit-making purposes, but all were identified by the FCC as falling outside the scope of the TCPA. *Id.* at 25973-74. Thus, simply because a fax was sent for the ultimate economic benefit of a for-profit entity does not transform a survey into an advertisement.

The statutory text of the TCPA and the text of FCC implementing regulations reinforce the finding that surveys are not advertisements. The TCPA defines "unsolicited advertisement" as "material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). Regulations define "advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200(f)(1). A "sender" for purposes of the TCPA is "the person on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(f)(10); *Imhoff Inv., L.L.C.*, 792 F.3d at 634 ("[U]nder the TCPA direct liability attaches to the entity whose goods [or services] are advertised as opposed to the fax broadcaster.").

Consistent through the text of all these statutory and regulatory provisions is the requirement that some product, whether it be a new car, auto repair services, or the availability of a lease for a garage, be offered for purchase by the recipient. *See, e.g.*, *United States v. Meriwether*, 917 F.2d 955, 958 (6th Cir. 1990) (referencing the "commercial availability" of recording devices for sale); *Westwood Chem., Inc. v. Dow Corning Corp.*, No. 2343, 1975 WL 21198, at *5 (E.D. Mich. Dec. 12, 1975) (discussing the "commercial availability" of rubber products for sale); BioSpace, *Neurelis Announces Commercial Availability of VALTOCO® (Diazepam Nasal Spray) for Seizure Cluster Rescue* (Mar. 2, 2020) (describing the "commercial availability" of a new nasal spray for sale). Some "property, goods, or services" must be offered or promoted; a survey simply does not do so. 47 U.S.C. § 227(a)(5); 47 C.F.R. § 64.1200(f)(1); 47 C.F.R. §

10

64.1200(f)(10). Surveys are designed to obtain information, and although their results may be used to make a profit, they are not themselves transaction-oriented sales mechanisms.

Although the FCC has not directly spoken on the issue with a binding regulation, the FCC has discussed surveys in interpretive documents. When discussing the definition of advertisement under the TCPA, the FCC reasoned that "any surveys that serve as a pretext for advertisement are subject to the TCPA's facsimile advertising rules. The TCPA's definition of 'unsolicited advertisement' applies to any communication that advertises the commercial availability or quality of property, goods or services, even if the message purports to conduct a survey." Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005, 71 Fed. Reg. 25967, 25973 (May 3, 2006). Thus, if a sender uses a survey motif to instead promote the sale of the sender's property, goods, or services –e.g., clicking a link for a survey about automobile styling only to be met with an offer to buy a new car—the transmission is not a survey but an advertisement covered by the TCPA. This fits within the textual understanding of TCPA advertisement as using the message to promote a product. 47 U.S.C. § 227(a)(5); 47 C.F.R. § 64.1200(f)(1). However, the FCC purposefully chose not to state that *all* surveys are advertisements under the TCPA and explicitly narrowed its analysis to surveys sitting in for commercial offers. Implicit in the FCC's analysis is the assumption that surveys generally are *not* advertisements under the TCPA. *N.L.R.B. v. SW Gen., Inc.*, 137 S.Ct. 929, 940 (2017) (citations removed) ("The *expression unius* cannon applies . . . when circumstances support a sensible inference that the term left out must have been meant to be excluded.").

Notably, the FCC has found surveys outside the bounds of the TCPA in the context of telephonic communications. 47 U.S.C. § 227(b)(1)(A)-(B) (included in the same statutory provision as the TCPA's fax prohibitions). The FCC responded to comments from "market research or polling organizations, whose activities are not invasive of residential privacy rights and were not intended to be protected by the TCPA." In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 7 FCC Rcd. 8752, 8774 (Oct. 16, 1992). The agency excluded "research, market surveys, political poling or similar activities" from liability. *Id.* Rationally, and in conformity with other TCPA sources, a survey does subject the caller to liability if the caller charges the recipient for the survey (i.e. offers and completes a sale of services) or includes other unsolicited advertising in the call. *Id.* at 8774 n.77.

Here, Defendant's fax was a survey. (ECF No. 1-1, PageID.21.) It asked Plaintiff, outside the context of a commercial sale of property, goods, or services, to provide information to Defendant, who would then use it to develop more elaborate market research. Defendant never promoted its own products for purchase by the Plaintiff and did not seek to obtain a profit from any money receipts. Although Defendant may have used the information to then obtain a profit through commercial transactions with its own clients who had by then received Defendant's (and others') market advice, it is no different that the PBM in *Sandusky* indirectly advancing its clients interests (and thereby its own) by seeking to lower drug costs for health plan members. 788 F.3d at 225. As the court found in *Sandusky*, 788 F.3d at 225, "ancillary, remote, and hypothetical economic benefit" does not create a commercial solicitation.

12

This finding does not change simply because Plaintiff's veterinarians could receive a $20 Amazon Gift card and eligibility in a sweepstakes for $500. Such ad-ons are sweeteners to incentivize higher response rates. Defendant argues and Plaintiff does not contest that they are a routine practice used to effectively administer market research studies. There are no allegations that Defendant was compensating Plaintiff for the fair market value of the survey to Defendant or any of Defendant's clients, or that Plaintiff was somehow underpaid for the value of "services" provided. Like charity fundraisers where participants donate and get placed in a pool of names to receive a prize, veterinarians might be further incentivized to complete the survey for Defendant, but merely offering benefits to participation does not transform Defendant's survey into a commercial offer to promote a product as opposed to gathering information. *See, e.g.,* Paul H.P. Hanel & Katia C. Vione, *Do Student Samples Provide an Accurate Estimate of the General Public*?, PLOS ONE (Dec. 21, 2016) (describing the wide-ranging impact of the use of undergraduates in psychology studies and surveys, a demographic whose participation is more effectively encouraged with the lure of college credits); MSU Twin Registry, *Current MSUTR Studies* (last visited March 4, 2020), https://msutwinstudies.com/current-studies (discussing the importance of "twin studies" in the advancement of medical research and offering participants willing to provide information "a gift card to thank them").

Defendant's fax remains devoid of an offer of property, goods, or services for purchase by Plaintiff. Further, to transform into an advertisement covered by the TCPA any survey that uses an incentive system, however *de minimus*, would sweep unreasonably broadly. It would quickly undermine the exclusion of surveys from the

TCPA and may effectively prevent market researchers from collecting information, given the realities of survey collection. Conducting research to increase the flow of valuable economic data would be disrupted in the name of a statute designed to prevent the likes of salesmen from calling a home at dinnertime. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370-71 (2012) ("Voluminous consumer complaints about abuses of telephone technology—for example, computerized calls dispatched to private homes—prompted Congress to pass the TCPA.")

Further, *Sandusky* and the statutory and regulatory texts are not clear that an offer to *purchase* services, such as an offer of employment, would be covered by the TCPA's facsimile requirements. Even if Defendant went beyond seeking participation in a survey, as it did in this case, and explicitly attempted to hire Plaintiff's veterinarians as employees, Defendant may not be subject to liability.

The court in *Sandusky* indicated that an advertisement "promotes the sale . . . of any property, good, or services available to be bought or sold so some entity can profit." 788 F.3d at 222. Plaintiff focuses on the language of a product "to be bought or sold" to argue that buying a service constitutes an advertisement. However, the statement in *Sandusky* related to the dictionary definition of advertisements, with its inherent implication that there must be a buyer and a seller. It was not a holding that offers to buy a product are covered by the TCPA. The Sixth Circuit's use of the words "to be bought" and "sold" appear to the court to be a colloquial idiom. The passive voice of "to be bought" signifies the same meaning as the active voice of "sold" and merely emphasizes the binary scope of virtually any commercial transaction. Further, a party "promot[ing] the sale" of a product, terms also included in the selected quote, is

generally understood to be the offer to sell the product, not an investigation as to the availability of sellers. *Sandusky*, 788 F.3d at 222; *see, e.g.*, *Sales Promotion*, Merriam-Webster Dictionary (last visited March 3, 2020), https://www.merriam-webster.com/dictionary/sales%20promotion (emphasis added) ("Activities and devices designed to create goodwill *and sell a product* . . . *selling activities* that supplement advertising."). This interpretation conforms to the rest of *Sandusky*, in which the court never mentioned offers to buy and which concluded with the definition of advertising under the TCPA as "promot[ing] goods or services *that are for sale.*" *Sandusky*, 788 F.3d at 222-23 (emphasis added). The court used only offers to sell products as examples of TCPA advertisements. *Id.* at 222.

TCPA statutory language and FCC regulations contain no reference to offers to buy goods or services and instead focus on the "promotion" of "commercially available" goods and services, specifically those products deriving from the sender. 47 U.S.C. § 227(a)(5); 47 C.F.R. § 64.1200(f)(1); 47 C.F.R. § 64.1200(f)(10) ("The term sender . . . means the person or entity . . . whose goods or services are advertised or promoted."); *Imhoff Inv., L.L.C.*, 792 F.3d at 634 ("[U]nder the TCPA direct liability attaches to the entity whose goods [or services] are advertised as opposed to the fax broadcaster."); *see, e.g., Sales Promotion*, Merriam-Webster Dictionary (last visited March 3, 2020), https://www.merriam-webster.com/dictionary/sales%20promotion; *Meriwether*, 917 F.2d 955, 958 (discussing "commercially available" products). This court has been unable to locate in FCC interpretive documents any application of TCPA facsimile advertising giving rise to liability based upon offers to buy. There are, however, countless examples of offers to sell. The FCC did reference "notice[s] soliciting bid proposals on . . .

15

construction project[s]," which would involve invitations to purchase construction services. Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005, 71 Fed. Reg. 25967, 25973 (May 3, 2006). The FCC found that such solicitation "would not be subject to the facsimile advertising prohibition, provided the notice does not otherwise contain offers for products, goods, and services," i.e., offers to sell. *Id.* Similarly, the court is unaware of any precedent from the Sixth Circuit or the Supreme Court applying the TCPA's fax provisions to offers to buy. All relevant caselaw involve offers to sell. *E.g.*, *Am. Copper & Brass, Inc. v. Lake City Indus. Prod., Inc.*, 757 F.3d 540 (6th Cir. 2014) (concerning the offer to sell a product manufactured by the sender); *Siding and Insulation Co. v. Alco Vending, Inc.*, 822 F.3d 886 (6th Cir. 2016) (discussing an offer to provide vending machine services).

One opinion from the Eastern District of Michigan has held that offers to buy services are "advertisements" under the TCPA and that surveys with participation incentives subject the sender to liability. *Lyngaas v. J. Reckner Assocs., Inc.*, 17-cv-12867, 2018 WL 3634309, at *3 n.2 (E.D. Mich. July 31, 2018) (Berg, J.). The *Lyngass* court relied on a dictionary definition of "want advertisement," which included offers to buy services. *Id.* However, if the court were to consider one dictionary definition of "advertisement" by itself, it could encapsulate all "public notices." *Advertisement*, Merriam-Webster Dictionary (last visited March 9, 2020), https://www.merriam-webster.com/dictionary/advertisement. The court does not view *Lyngass* as helpful in this case. First, applying such a broad interpretation to the TCPA would be in conflict with *Sandusky* and FCC interpretive documents. *Sandusky*, 788 F.3d 218 (concerning a "public notice" of prescription drugs covered in a medical plan); Rules and Regulations

Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005, 71 Fed. Reg. 25967, 25973 (May 3, 2006) (E.g., "industry news articles, legislative updates, or employee benefit information" are not covered by the TCPA, even if they are "public notices."). Second, *Lyngaas* did not squarely analyze the unique characteristics of surveys, in terms of *Sandusky*, the TCPA's statutory and regulatory text, or FCC interpretive documents. *Lyngaas*, 2018 WL 3634309, at *3. Nor did it identify the central focus of *Sandusky*, statutes, regulations, and FCC guidance on offers to sell, not offers to purchase. *Id.* Thus, while *Lyngaas*'s outcome differs, this court's reasoning was not addressed or contested.

Beyond the significant question of whether an offer to buy services in a facsimile is covered by the TCPA *at all*, Defendant's transmission in this case was not an offer to purchase a service, but only a request to complete a survey. A small gift card and entrance into a sweepstakes were part and parcel of the survey, which under the TCPA's fax requirements are not illegal. Defendant made no attempt to advertise a product—no property, no goods, no services—and is not liable under the TCPA. The court will grant Defendant's motion to dismiss as it pertains to Plaintiff's TCPA claim.

### B. Statutory Conversion

Plaintiff's suit is brought under federal question jurisdiction and the TCPA's private right of action. 28 U.S.C. § 1331; 47 U.S.C. § 227. (ECF No. 1, PageID.4, ¶ 8.) The only basis of jurisdiction for Plaintiff's state law claim is supplemental jurisdiction. 28 U.S.C. § 1367. Plaintiff does not allege a valuation of its damages for conversion and thus does not satisfy diversity jurisdiction. 28 U.S.C. § 1332(a) ("The district courts shall

have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000.").  (ECF No. 1.)

A district court may decline to exercise supplemental jurisdiction when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Federal Exp. Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996). Further, a court may decline supplemental jurisdiction where "the claim raises a novel or complex issue of [s]tate law." 28 U.S.C. § 1367(c)(1).

Considering "several factors, including 'values of judicial economy, convenience, fairness, and comity,'" the court will exercise its discretion and decline jurisdiction over Plaintiff's state law claim. *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Plaintiff is alleging that Defendant committed conversion, as codified under Mich. Comp. Laws § 600.2919, by sending Plaintiff an unwanted fax. To support this argument, Plaintiff cites two Eleventh Circuit cases and one Northern District of Illinois case. Plaintiff presents no Michigan jurisprudence to support the rather ambitious claim that by sending a fax message Defendant "converted" to its own use a sheet of Plaintiff's paper and the requisite ink toner. The court's independent research revealed no such precedent.

Statutory conversion under Michigan law requires a "distinct act of dominion wrongfully exerted over another's personal property in denial or inconsistent with his rights therein" as well as the converter's "own use" of the property. *Aroma Wines & Equip., Inc. v. Columbian Distrib. Servs., Inc.*, 497 Mich. 337, 351-52, 335 (2015) (citing

Mich. Comp. Laws § 600.2919). It is highly uncertain whether sending a transmission to machine, open and ready for communication with the outside world, involves intentionally exerting dominion over parts of the machine or its supplies such as ink and paper. *Id.* It is also unclear whether any conversion would be for the sender's "own use." *Id.* The analysis is a far cry from traditional cases of conversion, such as taking physical possession of a farmer's tractor equipment after a debt went into default. *Magley v. M & W Inc.*, 926 N.W.2d 1 (Mich. Ct. App. 2018).

The court previously declined supplemental jurisdiction for a very similar claim of conversion, filed by the same counsel representing Plaintiff in this case. *Tiffany Florist, Inc. v. Citizens Fin. Grp., Inc.*, No. 17-10551, 2017 WL 3224470 (E.D. Mich. July 11, 2017) (Cleland, J.). There, the plaintiff alleged "that [the] [d]efendants sent unsolicited faxes[,] converting [the] [p]laintiff's . . . use of its fax telephone line, fax machine, paper and toner cartridge." *Id.* at *3. The court reasoned that "it has been unable to locate a single Michigan case for conversion involving anything like an unsolicited fax" and ruled that "the parties present a novel question of state law." *Id.* The landscape of the law has not changed since the court's prior ruling.

If Plaintiff wishes to present a contestable legal theory never before endorsed by a Michigan court, it is best to do so in the Michigan court system. Michigan's state courts can better analyze their own law and explore possible new frontiers of traditionally understood concepts such as conversion, as they may wish. *Gamel*, 625 F.3d at 951. State litigation would directly confirm or deny the viability of Plaintiff's claim and would not substantially impact judicial economy. *Id.* The parties have not advanced to full discovery in federal court and would not be unduly prejudiced by pursuing the

claim in state court. *Id.*; *James v. Hampton*, 592 Fed. App'x 449, 463 (6th Cir. 2015)

(quoting *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1255 (6th Cir.

1996)) ("[D]ismissal of state claims is more appropriate 'when the court has not yet

invested a great deal of time.'"). Because Plaintiff has no remaining federal claim and

because Plaintiff raises a novel issue of state law, the court will not continue to exercise

supplemental jurisdiction over Plaintiff's claim for statutory conversion. 28 U.S.C. §

1367(c)(1), (3).

### IV. CONCLUSION

Plaintiff's TCPA suit relies on the contention that Defendant's fax was an

"unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). The TCPA does not impose

liability on surveys that actually are surveys, and Defendant's fax in this case was in fact

a survey. That it included participation incentives does not change that conclusion. The

court will dismiss Plaintiff's federal claim.

There are no remaining federal claims and liability for the transmission of a fax

under statutory conversion is a novel argument, best addressed in state court. The court

will decline supplemental jurisdiction. Plaintiff's statutory conversion claim will be

dismissed without prejudice. Lastly, Plaintiff's motion for class certification will be denied

as moot. Accordingly,

IT IS ORDERED that Defendant M/A/R/C Research's Motion to Dismiss (ECF

No. 12) is GRANTED. Plaintiff Exclusively Cats Veterinary Hospital's TCPA claim

(Count I) is DISMISSED. Plaintiff's Statutory Conversion claim (Count II) is DISMISSED

WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Plaintiff's "Motion to Certify Class" (ECF No. 3)

is DENIED as moot.

s/Robert H. Cleland                    /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: March 16, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, March 16, 2020, by electronic and/or ordinary mail.

s/Lisa Wagner                    /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\19-11228.EXCLUSIVELYCATS.MotiontoDismiss.RMK.RHC.2.docx